FILED
2013 Apr-29  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

DOUGLAS MARTIN KEY,

     PLAINTIFF,

v.                                                                CASE NO.: CV-12-J-314-NE

SHERIFF ANA FRANKLIN,

     DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment and evidence in support of said motion (docs. 33-34), the plaintiff's response and evidence in opposition (docs. 35-36), and the defendant's reply (doc. 39).  Having considered the pleadings and evidence, the court finds as follows:

### I.  Factual Background

Plaintiff sues his past employer, Ana Franklin, in her official capacity as the Sheriff of Morgan County, Alabama, for violations of Title VII, 42 U.S.C. §§ 2000e *et seq*., the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et seq*., and the Alabama Age Discrimination in Employment Act ("AADEA"), for gender discrimination and age discrimination.[1]

---

[1] All other defendants and claims have been dismissed.  On April 12, 2012, the court dismissed "Morgan County Sheriff's Office" as a party, plaintiff's claims in Count II and Count III for monetary damages, and Count IV of the complaint.  (Doc. 23).  On motion of the plaintiff, defendant Morgan County was dismissed as a party.  (Doc. 28).  Also on motion of the plaintiff, Count III of the complaint was dismissed.  (Doc. 30).

The facts relevant to this case began slightly before January 18, 2011, when defendant Franklin took office as Sheriff of Morgan County.  Affidavit of Franklin, submitted as defendant ex.1 (hereinafter referred to as the "2013 Franklin Affidavit"), ¶ 1.  Prior to stepping down, the outgoing Sheriff of Morgan County made several last minute promotions, including promoting the plaintiff to Lieutenant. *Id*., ¶ 2; Exhibit 4 to 2013 Franklin affidavit; plaintiff exhibit 4.  Thus, on January 19, 2011, defendant Franklin reversed these promotions, restoring each of the deputies promoted to the rank and position held immediately prior to those promotions.  Franklin depo. at 45-46; plaintiff exhibit 5.  However, plaintiff was not only demoted to sergeant, but was also removed as Field Commander of the Drug Task Force.  2013 Franklin Affidavit, ¶ 2.  Defendant Franklin's decision to remove the plaintiff from the Task Force was based on conversations she had before taking office with various individuals.  *Id.,* ¶ 3.  She readily admits she never spoke with the plaintiff prior to implementing this decision, nor did she make any attempt to do so.  Franklin depo. at 75.

When asked the basis for the demotions, Sheriff Franklin noted she wanted to fill her top positions with individuals of her own choosing and not the individuals chosen by her predecessor.  Franklin depo. at 78.  According to her testimony, when she removed the individual promoted to captain, that individual reverted to lieutenant, thus that position, momentarily occupied by the plaintiff, was no longer open, requiring the plaintiff be removed back to sergeant.  *See* plaintiff depo. at 72; 2013

2

Franklin Affidavit, ¶ 2; Franklin depo. at 77.  She stated that the individual promoted to captain was not really interested in those responsibilities, so once she demoted him, it caused a "domino effect."  *Id.*

In contrast, plaintiff's removal from Field Commander and narcotics work was not based on a desire to place her own choice in that position, but rather based on conversations she had with others concerning the plaintiff's stress level due to his home life.  2013 Franklin Affidavit,  ¶ 3.  *See also* plaintiff depo. at 66; Franklin depo. at 40, 102.  Between the time that she won the General Election in November 2010 and took office on January 18, 2011, Sheriff Franklin held discussions with Mike Corley, Chief Deputy, as well other members of the Task Force,[2] both individually and as a group.  2013 Franklin Affidavit, ¶ 3; Franklin depo. at 38-40.  The defendant asserts that although she never observed the plaintiff performing his duties as Field Commander of the Task Force, she removed him from that office based on his performance of the same.  Franklin depo. at 98-101.  She also asserts that she believed the Commander of the Drug Task Force should have various

---

[2]Those members of the Task Force included Shannon Hale, Shannon Ferguson, Zach Dockery, Blake Robinson, and Robert "Bones" Wilson.  Franklin depo. at 40.  According to Franklin, those individuals told her that plaintiff exhibited violent outbursts, anger, mood swings, inability to make safe tactical decisions, used members that were not certified law enforcement officers, short-cutted safety measures, and bad supervisory habits.  Franklin depo. at 101-102.  When questioned, Franklin stated that all these people, as well as two judges and several attorneys, told her that plaintiff exhibited violent outbursts. *Id.,* at 135-137.  She also mentioned she heard about plaintiff's temper from his ex-wife, at a gathering for a child's birthday party. *Id..*, at 153.

certifications, including an OSHA certification on how to dismantle a methamphetamine lab.  2013 Franklin Affidavit, ¶ 3.  However, she never attempted to speak with the plaintiff prior to deciding to demote him or remove him as Commander.  Franklin depo. at 75.  Additionally, no evidence supports a finding that plaintiff was ever disciplined in his role as Field Commander of the Task Force.

Although the plaintiff was made Field Commander June 4, 2009, Sheriff Franklin pointed to a December 24, 2003, incident between the plaintiff and jail staff, a 2004 incident where plaintiff divulged the name of a confidential informant, two incidents involving insubordination – one for which plaintiff received a three day suspension, a 2007 incident regarding the mishandling of prisoners, and a November 2008 complaint concerning the plaintiff's behavior in court, to demonstrate why she believed him unfit for that role.[3]  Franklin depo. at 106-108, 110, 115, 117-119, 125, 127-128.  When questioned, Franklin stated she considered his entire personnel file in making her decision, although she did not review it until after she decided to make the demotion.  Franklin depo. at 110, 126.  According to defendant Franklin, all of these incidents, up until 2008, demonstrate the behavior that the plaintiff had

---

[3]The letter from the then Sheriff to plaintiff promoting him to sergeant, dated February 9, 2009, entitled "Letter of Promotion," states that the same is "based on several years of observing you and your work on a daily basis...Your dedication to your Law Enforcement career is evident. The professional manner in which you conduct your daily responsibilities has not been unnoticed.  You have proven yourself a leader, and you are viewed by fellow officers with high regard."  Plaintiff's exhibit 2.  Similarly, a job evaluation for October 1, 2008, through April 30, 2009, rates the plaintiff as "good" or "excellent" in every category.  Plaintiff's exhibit 3.

4

exhibited during his career which was at the heart of her decision to remove him as Field Commander, although she had not personally ever observed any such behavior from him.[4]  Franklin depo. at 130-131.  Franklin continued that "[i]t was very common knowledge by his general behavior, his general attitude, things that were going on at home, issues with his divorce..." although she could not identify a single issue that she thought exhibited a sign of stress.  Franklin depo. at 131-132.  Sheriff Franklin has not removed any other members of the Sheriff's Office because they exhibited signs of stress.  Franklin depo. at 146-147.

Because defendant Franklin undertook these actions against the plaintiff, he became upset, precipitating a meeting on January 20, 2011, between the plaintiff and Sheriff Franklin.  2013 Franklin Affidavit, ¶ 5.  Defendant Franklin offered the plaintiff other positions, which he refused,[5] and also informed him she thought he needed counseling to deal with his emotional and personal issues.  *Id*.  According to Franklin, the plaintiff was disrespectful and insubordinate during this meeting.  *Id.*, ¶ 6.  *See also* affidavit of Mike Corley, submitted as defendant exhibit 2, ¶ 5; Franklin

---

[4]Neither party submitted the documentary evidence on which this testimony is based as exhibits in support of or in opposition to the pending motion for summary judgment.

[5]Franklin offered him criminal investigations, warrant division, patrol or courts.  Franklin depo. at 53-54.  According to her, she told him he could do anything except be commander of the Drug Task Force.  *Id*.  She then amended her statement to be "any other non-stressful situation other than the drug task-force.  Any other position that did not have the type of environmental stresses that goes with the commander of the drug task force."  *Id*.  According to Franklin, the Task Force was more stressful work than other deputy positions.  *Id*., at 58-59.  Plaintiff responded that Franklin could not remove his rank or pay.  *Id.*, at 86-87.

depo. at 89-93.  After the meeting was over, plaintiff called Franklin and apologized for his behavior.  Franklin depo. at 93.  She too apologized for yelling and using inappropriate language.  *Id*., at 95.  She told him that after everything cooled down, they should meet again, and he should think about what else in the department he would like to do.  Franklin depo. at 93-94.  Plaintiff provided written notice on January 26, 2011, that he was appealing his demotion and removal as Field Commander to the Morgan County Personal Board.[6]  2013 Franklin Affidavit, ¶ 7. Before that hearing occurred, defendant Franklin rescinded all personnel provisions in the Sheriff's Office Manual of Rules and Regulations adopted by her predecessor, retroactive to the minute she took office.  *See* plaintiff ex. 8.

However, relying on the Morgan County Policy and Procedures Manual, Sheriff Franklin also determined that the promotions made by her predecessor were probationary for six months, and hence she could demote these three individuals without cause or without it reflecting badly on them.  Franklin depo. at 84-85.  After making the demotions, she did discuss with the plaintiff whether he was entitled to a hearing on the demotion.  *Id.*, at 85-86.  Franklin informed the plaintiff that she could demote him because he was on probation, and that there was no open slot at

---

[6]According to defendant Franklin, the plaintiff asked that Franklin put the reasons for his demotion in writing and provide him with a hearing.  Franklin depo. at 86.  She declined to do so, stating she was not required to put it in writing because she explained it to him in person.  *Id.*

Lieutenant because of the demotion from Captain to Lieutenant of Tom Hines. Franklin depo. at 87.

Thereafter, on January 31, 2011, a second meeting between plaintiff and defendant Franklin took place, during which the plaintiff was again insubordinate.[7] 2013 Franklin Affidavit, ¶ 8; Corely Affidavit, ¶ 6.  That same date, defendant Franklin completed department forms reflecting that the plaintiff resigned.  Plaintiff exhibit 6.  By affidavit in 2011, Sheriff Franklin stated that during the January 31 meeting, she informed the plaintiff that if he did not act appropriately, he could either quit or she would fire him.  2011 Franklin affidavit, submitted as plaintiff exhibit 12. According to those at the meeting, the plaintiff acted as though he resigned, including turning in keys and retrieving personal items from his patrol car.  Corely Affidavit, ¶ 6; 2011 Franklin affidavit, ¶ 5.  However, the plaintiff asserts he that he did not resign at that time.  Rather, the plaintiff contacted Captain Law and requested and received paid leave, approved by Sheriff Franklin.  2011 Franklin affidavit, ¶ 6.

Prior to plaintiff returning to work, defendant Franklin terminated the plaintiff by letter dated February 11, 2011.  Plaintiff ex. 7; 2013 Franklin Affidavit, ¶ 10.  She explained that "I decided to terminate him after I found out he hadn't quit."  Franklin depo. at 63, 67.  That decision, made the same date as the Sheriff's announcement

---

[7]According to Deputy Chief Corley, plaintiff's acts of insubordination would be grounds for termination under the Sheriff's Office Manual (Corley Affidavit, ¶ 7), although the same was retroactively rescinded by Defendant Franklin.

that no personnel policies in the Sheriff's Office Manual had any effect anymore, was also appealed to the Personnel Board.  2013 Franklin Affidavit, ¶ 10.  The ultimate decision of the Board was that plaintiff's demotion, removal and termination were due to be upheld.  *Id*., ¶ 12.  It noted its advisory role, stated that it considered the volatile meetings between the plaintiff and sheriff, and did not find that the actions in question were the result of unlawful discrimination.  Exhibit 3 to 2013 Franklin Affidavit.  The Board continued that "to require the Sheriff to place [plaintiff] back on active duty status would be to place her in a most untenable position as chief of a department where the respect of her subordinates for her office is of paramount importance...."  Exhibit 3 to 2013 Franklin Affidavit, at 11.   The Board stated "[t]his conclusion is most regrettable as it appears that Mr. Key had been an excellent deputy and devoted public servant during his tenure as Deputy Sheriff." *Id.*, at 12.  It also noted that "despite the Sheriff's edict that portions [of the Sheriff's Manual] do not apply to deputies, the manual itself should clearly state to what extent it does or does not apply...."  *Id*., at 13.  By letter dated April 6, 2011, the Chairman of the Morgan County Commission informed plaintiff's counsel that the Commission had no authority to consider or reverse Sheriff Franklin's decision.  Plaintiff ex. 9.

Sheriff Franklin testified that Ron Livingston (age 71) was first hired to fill plaintiff's vacant position, then promoted in May 2011 to the Captain's position that

had remained vacant.[8]   Franklin depo. at 80; 2011 Franklin affidavit, ¶ 14. Thereafter, Robert "Bones" Wilson was promoted to the open Sergeant position in October 2011, and then to lieutenant on June 16, 2012.  Franklin depo. at 67, 80.  As Commander of the Task Force, the plaintiff was initially replaced by Shannon Hale, but after he left, no one filled the role until "Bones" Wilson's appointment to the same.  Franklin depo. at 68, 192.  However, records reflect that Wilson was moved to narcotics four days after Franklin took office, promoted to Sergeant October 8, 2011, and promoted again to lieutenant June 12, 2012.  Franklin depo. at 193.

Defendant Franklin's deposition concluded with the following exchange:

Q.    One of the things Mr. Key has sought in his action is reinstatement.  If ordered by a court to reinstate Mr. Key to a position that he previously held, be it lieutenant, commander of the drug task force or just sergeant, would you have any objections to doing so?

A.    Yes.

Q.    And what would that objection be?

A.    I wouldn't do it.

Q.    You would refuse the order of a federal court?

A.    No.  I guess I would have to reinstate him and then terminate him again.

Q.    And why would you terminate him again?

---

[8]Franklin's testimony on this issue is unclear.  She stated that Ron Livingston was hired to fill plaintiff's vacant position as a deputy, but not as a sergeant.  Franklin depo. at 80-82.

A.      Because I wouldn't have him work for me.

Franklin depo. at 200.

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Insurance.*, 232 F.3d 844, 848 (11th Cir.2000).

### III.  Legal Analysis

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination. *Wilson v. B/E Aerospace, Inc*,. 376 F.3d 1079, 1088 (11th Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147-48,

120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

**Gender Discrimination claim (Count I):**

Plaintiff asserts that the above facts constitute gender discrimination. As there is no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence. This court must apply the three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997). Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the

employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083. A plaintiff has not successfully demonstrated pretext "unless it is shown both that the reason was false, *and* that discrimination was the real reason." *Brooks v. County Comm'n*, 446 F.3d 1160, 1163 (11th Cir.2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993)). The plaintiff may do so by either directly "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (citing *McDonnell Douglas*, 411 U.S. at 804-05, 93 S.Ct. at 1825-26). If the prima facie case is met, and a reasonable jury could disbelieve the defendant-employer's proffered legitimate reason for the adverse employment action, the district court cannot grant summary judgment to the defendants. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *see* also *Wilson*, 376 F.3d at 1088; *Combs,* 106 F.3d at 1538 (stating

that once a court determines that "a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, [it] may not preempt the jury's role of determining whether to draw an inference of intentional discrimination").

To establish a prima facie case of gender discrimination, the plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position that he held; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual outside his protected class. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir.2010). The defendant asserts that the plaintiff is unable to prove that he was replaced by a person outside his protected class (i.e., a female). Defendant's brief in support, at 18. The plaintiff, in contrast, alleges that the court must consider whether the plaintiff was treated differently from similarly situated individuals. Plaintiff's opposition, at 14.

The plaintiff offers two women as comparators who, while both disciplined by the defendant, have not been terminated. Having carefully read the evidentiary submissions, the court is unable to stretch the requirement that a comparator be similarly situated far enough to include Amy Dial, as proposed by plaintiff. To be an adequate comparator, the preferentially treated individual from outside the plaintiff's protected class has to be similarly situated to the plaintiff in all relevant respects. *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1326 n. 17 (11th Cir.2011); citing

14

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997) (citations omitted).  In order to be considered "similarly situated," the compared employees must have been "involved in or accused of the same or similar conduct," yet "disciplined in different ways" for that conduct.  *Id.  See also Burke-Fowler v. Orange County,* 447 F.3d 1319, 1323 (11th Cir.2006).  Unlike the plaintiff, Ms. Dial was not a sworn law enforcement officer, but rather the pistol permit clerk.  *See e.g.*, Franklin depo. at 164.

In contrast, the other comparator plaintiff suggests, Ms. Hattie Hampton, was like plaintiff, a deputy.  *See* Franklin depo. at 181.  She too was accused of inappropriate conduct, and conduct which also endangered others, but was not terminated after her rank was removed*. See e.g.,* plaintiff exhibit 18; Franklin depo. at 185.  However, because she was disciplined by a different decision maker, the court cannot use Ms. Hampton as a comparator either.  The proffered comparators' actions are only relevant if it is shown that the decision maker knew of the prior similar acts and did not discipline the rule violators. *See Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir.1989).  Likewise, comparator evidence fails where different decision makers are involved. *Jones v. Gerwens*, 874 F.2d at 1541.  Knowledge of a prior act cannot be imputed on a decision maker, because "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001). The court in *Silvera* noted that "differences in treatment by different supervisors or decision

makers can seldom be the basis for a viable claim of discrimination." *Silvera*, 244 F.3d at 1261 n. 5. See also *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1312 n. 7 (11ᵗʰ Cir.1998) ("Different supervisors may have different management styles that—while not determinative—could account for the disparate disciplinary treatment that employees experience.").

Because the plaintiff is unable to establish that his was treated differently than any comparator outside his protected class, the court must grant summary judgment in favor of the defendant and against the plaintiff on this count of the complaint.

## B.  *Age Discrimination (Count II)*

The burden of proof for ADEA claims differs from the employment discrimination statutes. "[T]he ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174, 129 S.Ct. 2343, 2349, 174 L.Ed.2d 119 (2009) (emphasis added).  Instead, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id*. at 2351.  In general, a plaintiff may assert a prima facie case of unlawful age discrimination by alleging sufficient facts to show that: (1) he is a member of the protected group of persons over age forty; (2) he suffered an adverse employment action; (3) he was replaced by a person outside the protected group, or at least by a substantially younger person (or was rejected for a

position in favor of the younger person); and (4) he was qualified for the job at issue. *See, e.g., Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987); see also *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (an ADEA plaintiff must show that she was replaced by someone "substantially younger," not necessarily by someone under age forty).

The plaintiff survives this hurdle.  From the evidence, the court finds that in the light most favorable to the plaintiff, he was replaced by "Bones" Wilson and not by Ron Livingston, as claimed by defendant.[9]  *See e.g.*, findings of the Morgan County Personnel Review Board, at 9-10.[10]  Additionally, while defendant Franklin testified Mr. Livingston, age 71 was hired in the plaintiff's position, she later amended her answer to clarify that Mr. Livingston was her next hire, and that he did not replace the plaintiff as sergeant, or Field Commander of the Drug Task Force.  The parties agree that the plaintiff was 47 at the time of his termination, having been born in 1963.  *See*

_____

[9]In her reply brief, the defendant states only that "[f]or purposes of this Reply Brief, we will omit any argument as to whether the plaintiff was replaced by Robert Livingston (age 71) or Robert "Bones" Wilson (who is younger than 40 years)." Reply, at 8.  Thus, the question of who replaced the plaintiff remains a subject of factual dispute.

[10]The court notes the same evidence could suggest a personal vendetta against the plaintiff and not age discrimination.  The Personnel Review Board noted that Deputy Wilson was a close personal friend of defendant Franklin and of an individual with whom defendant Franklin has a "personal relationship;" that plaintiff "was instrumental in having Deputy Wilson removed from a multi-county drug task force;" and that "one of her first actions upon taking office was to reassign Deputy Wilson to that task force." Findings of the Morgan County Personnel Review Board, at 9-10.  However, as defendant Franklin has argued nothing of the sort, the court leaves this for a jury to decide.

*e.g.*, Complaint, ¶ 17.  The plaintiff suggests Mr. Wilson was born in 1972, thus at the time plaintiff was terminated, Wilson  was not within the protections of the ADEA. Therefore, the court finds the plaintiff has established a *prima facie* case for age discrimination claim.  This means only that the burden shifts to the defendant to put forth a legitimate, non-discriminatory reason for its decision.

The defendant asserts that she has established legitimate reasons for the removal, demotion and termination of the plaintiff, namely that "it was not in the best interest of the Sheriff's Department and Sergeant Key for him to continue as Field Commander" because of statements Sheriff Franklin heard from various individuals. *See* defendant's brief, at 18.  From a review of the evidence, the court finds these individuals came from members of the task force, members of the legal community, and the plaintiff's ex-wife.   The plaintiff was provided no opportunity to verify the truth of any of these statements prior to the time defendant chose to act on them. Similarly, while defendant Franklin asserted she relied on the plaintiff's personnel file in making her decision to remove plaintiff as Field Commander of the Task Force, she also testified that she did not review that file until after she made her decision.

Because a jury could find that the reasons provided by the defendant were a pretext for age discrimination, because the plaintiff was arguably replaced by a younger individual, and because the defendant's testimony made clear she was intent on removing plaintiff from Sheriff's Office employment, the court finds genuine

18

issues of material fact remain in this case for resolution by a jury, specifically with regard to the issue of whether "but for" the plaintiff's age the adverse employment action would have still occurred.

## **CONCLUSION**

Having considered the foregoing, and finding that genuine issues of material fact remain sufficient to allow this case to proceed to trial on the plaintiff's claim under the ADEA, the court shall order that the defendant's motion for summary judgment is granted on the plaintiff's claim for gender discrimination under Title VII, but denied on the plaintiff's claim for age discrimination under the ADEA

**DONE** and **ORDERED** this the 29th day of April, 2013.

_____

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE